BENJAMIN B. WAGNER
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
JACKLIN CHOU LEM
Special Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>YEVGENIY CHARIKOV, ET AL<br><br>                Defendants. | CASE NO. 2:12-CR-003 LKK<br><br>UNITED STATES' MOTION IN LIMINE TO ADMIT EVIDENCE INEXTRICABLY INTERTWINED WITH THE CHARGED OFFENSES<br><br>Trial: August 5, 2014<br>Time: 9:00 a.m.<br>Judge: Lawrence Karlton |

## I. INTRODUCTION

This is a mortgage fraud case involving two charged properties in West Sacramento, one on Lewiston Road and another on Henshaw Road. The United States expects to offer evidence of another, uncharged transaction involving the sale of a property owned by defendant Charikov's mother. This evidence is inextricably intertwined with the charged property on Henshaw Road. The two deals occurred close in time and involved the same cooperating witness Valeri Mysin. Several interactions and conversations Mysin had with defendants Romanishin and Charikov involved both deals simultaneously, and ultimately, Romanishin and Charikov compensated Mysin at the same time for his role in both deals. To tell a coherent and comprehensible story about his dealings with Romanishin and Charikov, Mysin should be permitted to testify about both property transactions. Even if the evidence

United States' MIL to Admit Evidence
Inextricably Intertwined with the Charged Offenses

1

1 on the uncharged property is not inextricably intertwined with the charged Henshaw property, it is still
2 admissible under Federal Rule of Evidence 404(b) to show knowledge and intent.  In an abundance of
3 caution, the United States provided notice under Rule 404(b) to the defendants on July 21, 2014, fifteen
4 days prior to trial.

## II.    FACTUAL BACKGROUND

The United States intends to call in its case-in-chief Valeri Mysin, a cooperating witness. Mysin's FBI Form 302 dated July 15, 2014 is attached as an exhibit to this motion, and a summary of his expected testimony follows.[1]  Mysin is expected to testify that in the latter part of 2006, defendant Juliet Romanishin called him because she and her husband, defendant Yevgeniy Charikov, needed Mysin's help with a couple of real estate deals.  These deals included the Henshaw property charged in the indictment and another deal involving the sale of a property owned by Charikov's mother (Squaw Road).  Romanishin and Charikov needed help on the deals because they could not get the deals approved through their lender and/or because they could not find a buyer.  Romanishin asked for Mysin's help on the deals because they involved inflated property values and inflated income and could not be completed using true and accurate information from the buyer.

For the Henshaw property charged in the indictment, Romanishin provided a full lending package to Mysin.  Vladimir Khripunov was the straw buyer for the Henshaw property, and he is expected to testify as a cooperating witness.  Khripunov's loan application for the Henshaw property contained false statements, including misrepresentations about his income.  The lending package Romanishin delivered to Mysin contained the false statements about Khripunov's income.  Mysin used the information Romanishin provided to complete a new loan application that Mysin submitted under his name as the loan officer.

At around the same time as the Henshaw deal, Romanishin and Charikov brought another deal to Mysin involving Charikov's mother as the seller.  Romanishin and Charikov wanted Mysin to help find a straw buyer for the property.  Mysin explained to Romanishin and Charikov that if he found a buyer,

---

[1] In addition to Charikov's mother's property on Squaw Road, the Mysin FBI 302 at page 3 mentions other properties: Southwick, Isabella, and Downing. The government does not intend to admit any evidence regarding these three additional properties.

Mysin would use illegitimate invoices to obtain equity from the property so that Mysin and the buyer would be paid for their roles in the transaction.  Romanishin and Charikov told Mysin that they did not want to use invoices because they wanted to keep the deal clean and did not want to create a paper trail showing money going back to the buyer.  Mysin ultimately found a buyer for this transaction.

Subsequently, Romanishin and Charikov compensated Mysin for his role in facilitating the two deals.  Mysin met with Romanishin and Charikov in a parking lot.  Mysin got into the back seat of Romanishin's and Charikov's car.  Both Romanishin and Charikov were in the car and one of them handed Mysin an envelope with approximately $88,000 in cash.  This cash represented approximately $80,000 from the deal involving Charikov's mother's proprety and $8,000 from the Henshaw property.

The government interviewed Mysin on the afternoon July 15, 2014.  That same afternoon, the government notified defense counsel that it expected to call Mysin in its case-in-chief.  The FBI 302 from Mysin's interview was shared with defense counsel two days later on July 17, 2014.  Moreover, on July 21, 2014, the government notified defense counsel, in an abundance of caution, that it intended to use evidence of Mysin's dealings on transactions other than the Henshaw property as inextricably intertwined with the charged scheme, or alternatively as 404(b) evidence.

**III.    ARGUMENT**

**a.    Mysin's Testimony Should be Admitted as Evidence That is Inextricably Intertwined.**

The Ninth Circuit has recognized that "[e]vidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined.'" United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) (summary chart listing 102 fraudulent insurance claims during period charged in indictment not "other crimes" evidence but inextricably intertwined) (citations omitted).  When some of the acts that constitute a single criminal episode are not charged, they do not thereby become other acts.  Id.  Decisions have also referred to evidence that is "an integral part of the scheme," United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir. 1987) (communications with victims integral part of fraudulent scheme), and "direct proof" of a charged crime, United States v. Campbell, 774 F.2d 354, 356 (9th Cir. 1985) (evidence of theft was direct proof that charged items were stolen from the mail), with the same result: the evidence is admitted.

The Ninth Circuit has identified two categories of "other act" evidence exempt from Rule 404(b) because it is inextricably intertwined with the underlying offense. United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995). The first kind is evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge," such as when the defendant is indicted for less than all of his conduct. Id. at 1012. See, e.g., United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (evidence about uncharged narcotics transactions properly admitted to explain the witness' role in the charged conspiracy as a distributor of the defendants' narcotics); United States v. Mundi, 892 F.2d 817, 820 (9th Cir. 1989) (although tried on an indictment charging fraud of only one travel agency, evidence that scheme involved eleven other travel agencies was properly admitted because inextricably intertwined with and part of the same transaction as the scheme charged in the indictment).[1]

The second category includes evidence that is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," i.e., to explain the events surrounding the commission of the crime or how certain evidence was obtained. Vizcarra-Martinez, 66 F.3d at 1012-13. See, e.g., United States v. Daly, 974 F.2d 1215 (9th Cir. 1992) (upholding admission of evidence that defendant had engaged police in an eleven-hour shootout before he was finally arrested and charged with being a felon in possession of a firearm, the crime for which he was tried). The Court explained in Daly that the prosecution is not required to prove the elements of a crime in a vacuum, and that the jury is not expected to make its decision in a void without knowing the time, place, and circumstances of the events surrounding the charge. Daly, 974 F.2d at 1217. The shootout evidence was inextricably intertwined with the felon-in-possession charge because it was necessary to rebut a self-defense claim. Id.

In this case, both categories of inextricably intertwined, "other acts" evidence apply. The two transactions involving Charikov's mother's house and the Henshaw Road property occurred close in time and were part of a single scheme to defraud mortgage lenders by submitting loan applications with inflated income and inflated property values. The fact that Romanishin and Charikov were indicted for less than all of their conduct does not make evidence regarding the uncharged property transaction

---

[1] In Mundi, because the evidence also tended to rebut the defendant's defense of lack of criminal intent, the evidence was also admissible under Rule 404(b).

United States' MIL to Admit Evidence
Inextricably Intertwined with the Charged Offenses

4

irrelevant or inadmissible. Moreover, Mysin should be allowed to testify about his property dealings with Romanishin and Charikov to provide context explaining how Romanishin reached out to him, why she reached out to him, how he came to be involved in the scheme, and how Romanishin and Charkiov paid him for his role. Mysin's property dealings with Romanishin and Charikov did not occur independently of each other, not did they occur sequentially, separated by time. Instead, the property dealings occurred simultaneously, and various discussions among the three individuals involved discussions of both properties at the same time. To provide a coherent narrative, Mysin should be permitted to testify about the entire story as a whole, not bits and pieces related to just the charged Henshaw property.

### b. Even if it is Not Inextricably Intertwined, Mysin's Testimony Should Nevertheless Be Admitted Under Federal Rule of Evidence 404(b).

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts that might adversely reflect on the defendant's character is admissible if it bears on a relevant issue, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Huddleston v. United States, 485 U.S. 681, 685 (1988). The Ninth Circuit has consistently construed Rule 404(b) as being a rule of inclusion: evidence of other acts is admissible "except where it tends to prove only criminal disposition." United States v. Ayers, 924 F.2d 1468, 1472-73 (9th Cir. 1991); Heath v. Cast, 813 F.2d 254 (9th Cir. 1987) (both citing other cases).

To use 404(b) evidence, the government must establish that (1) the evidence is probative of a material issue in the case; (2) the act is similar to the offense charged (in some cases); (3) there is sufficient evidence for the jury to conclude that the defendant committed the prior act; (4) the prior act is not too remote in time; and (5) as with all relevant evidence, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993).

Should the Court determine that Mysin's testimony about his property dealings with Romanishin and Charikov is not inextricably intertwined, his testimony is nevertheless admissible under Rule 404(b). The five factors discussed above are met in this case. First, the fact that defendants Romanishin and Charikov engaged in another fraudulent transaction at the same time as the Henshaw transaction is

probative of their knowledge and intent, issues that are material in this case. To the extent that either defendant claims they did not know about the false statements and played an innocent role in the charged transaction, Mysin's testimony is relevant to rebut a claim of lack of knowledge and intent. Second, both dealings Mysin had with Romanishin and Charikov are similar. According to Mysin, both involved loans with inflated incomes and inflated properties. Third, based on Mysin's testimony, there is sufficient evidence for the jury to conclude that Romanishin and Charikov were involved in the other transaction. Fourth, the two transactions occurred close in time. Finally, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, given the similarity of the conduct and their closeness in time. Any danger of unfair prejudice can be addressed with an appropriate limiting instruction to the jury.

### c. The Government Provided Reasonable Pre-Trial Notice

Federal Rule of Evidence 404(b)(2) states, "On request by a defendant in a criminal case, the prosecutor must: (1) provide reasonable notice of the general nature of any [evidence the prosecutor intends to offer under 404(b)]; and (2) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice." Mysin's testimony is inextricably intertwined with the charged Henshaw property. But in the alternative, if the testimony is 404(b) evidence, the government has met the notice requirement of 404(b)(2). The government provided notice of not only the "general nature" of the evidence, but a detailed FBI 302 memorializing Mysin's testimony. The Mysin FBI 302 was disclosed to defense counsel two days after Mysin's interview. Fifteen days before trial on July 21, 2014, the government, in an abundance of caution, notified defense counsel that if Mysin's testimony was not inextricably intertwined, it intended to admit the evidence under Rule 404(b).

//

//

//

//

United States' MIL to Admit Evidence
Inextricably Intertwined with the Charged Offenses

6

## IV. CONCLUSION

For the reasons stated above, the Court should permit Valeri Mysin to testify as described above. Mysin's testimony about the uncharged property dealing he had with Romanishin and Charikov is inextricably intertwined with the charged Henshaw property. Alternatively, the testimony is admissible as 404(b) evidence to show knowledge and intent.

Dated: July 22, 2014                               BENJAMIN B. WAGNER
                                                   United States Attorney

                                              By:  /s/
                                                   HEIKO P. COPPOLA
                                                   Assistant United States Attorney


                                                    /s/
                                                   JACKLIN CHOU LEM
                                                   Special Assistant United States Attorney